**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO**

**CEDRICK LEE POLLARD**                                                     **PLAINTIFF**

**v.**                               **CIVIL ACTION NO. 4:06-CV-P134-M**

**JOE BLUE et al.**                                                     **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Defendants Joe Blue, Holly Rickard, Joey Pleasant, Jill Stevens, and Kenneth Stone have moved for summary judgment (DN 47). Plaintiff has responded (DN 58). Defendants have filed a reply (DN 59). The matter being ripe, the Court will grant the motion for summary judgment for the following reasons.

**I. SUMMARY OF CLAIMS**

According to the complaint, on July 24, 2006, while incarcerated at the Hopkins County Jail, Plaintiff became very sick to his stomach, vomiting and eventually collapsing. He alleges that the vomiting continued despite being given "phinergen" and a "red liquid." He alleges that he was finally taken to the Union County Hospital on July 27th. He states that he stayed at the Union County Hospital until he was taken to the Henderson County Hospital on the 29th of July for emergency surgery. He asserts that his constitutional rights were violated because while he was incarcerated at the Hopkins County Jail he was refused proper medical attention and his requests for help were neglected. He also states that it was due to neglect that he was cut open and operated on. He requests $500,000 in monetary damages, $500,000 in punitive damages, and "medical relief for the rest of my life due to this problem."

Defendants argue in their memorandum in support of their motion for summary judgment that, in fact, Defendants did provide medical care to Plaintiff for what turned out be a congenital

condition and that, at most, Plaintiff disagrees with the conservative course of treatment that Defendants provided, which is not a constitutional violation. They also argue that Plaintiff failed to exhaust his remedies because he did not file a grievance or a sick call form.

Defendants' motion for summary judgment is supported by a number of exhibits, among them an inmate incident report dated July 25, 2006, stating that on that date Plaintiff complained of stomach pains at which point he was "taken to medical," examined by an RN, had his vital signs checked, and was cleared to return to his cell. Defendants also attach Physicians' Orders dated July 25, 2006, showing that Plaintiff was prescribed Phenergan and Zantac.[1] Another inmate incident report, dated July 26, 2006, states that Plaintiff was found lying on the floor of his cell after other inmates alerted prison officials by beating on the walls. Plaintiff was evaluated by an LPN, who instructed that Plaintiff be brought to the medical office. Plaintiff was assisted into the restraint chair and the lap belt was placed on him "so that he would not fall out." Handcuffs also were placed on him because he was a maximum-security inmate. The LPN evaluated Plaintiff, gave him some medication, and instructed that he be placed on medical watch and isolated from other inmates. The restraints were removed from Plaintiff. Progress Notes dated July 26, 2006, are attached showing that Plaintiff was put under constant observation, was isolated from other inmates because his stomach complaint might be a virus, and was given some medication after it was determined that his bowel sounds were "hyperactive." Progress notes dated July 27, 2006, show that Plaintiff was seen twice by the attending physician, he was continued on constant observation, his blood pressure was checked

---

[1] Phenergan is a medication used to prevent and treat nausea and vomiting related to certain conditions. *See* www.webmd.com. Zantac is a medication used to treat certain stomach conditions caused by too much stomach acid. *Id.*

2

twice, and he was in stable condition when he was transferred to Union County at 2:00 pm.

According to records from Methodist Hospital, Henderson, Kentucky, attached to Defendants' summary-judgment motion, Plaintiff was admitted to the hospital on July 27, 2006, and was diagnosed with unspecified intestinal obstruction. Those notes state that Plaintiff had experienced billious vomiting for the previous three days, which was "unresponsive to conservative pharmacologic therapy." Those hospital notes show that Plaintiff was released from the hospital on August 5, 2006, with a diagnosis of "small bowel obstruction secondary to congenital band." While in the hospital, an exploratory laparotomy, lysis of adhesions, and appendectomy were performed.

In response, Plaintiff argues that for three-and-a-half days he was in pain when it was obvious that the limited treatment provided by Defendants was not helping. He argues that he was not referred to a more qualified doctor until he was transferred to another institution. He also argues that the Defendants' use of the restraint chair to support him indicates that Defendants knew how ill he was.

In their reply, Defendants state that Plaintiff's deliberate-indifference claim must fail because it is in essence only a disagreement with his doctors' diagnoses or, at best, a claim for negligent medical treatment. Defendants also argue that the use of the restraint chair was appropriate under the circumstances and that Plaintiff was removed from the restraints once he was placed in isolation for medical observation.

## II. ANALYSIS

**A.  Summary-judgment standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted, citing FED. R. CIV. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is

"entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *Id.*

**B.      Deliberate indifference**

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp*., 286 F.3d 834, 843 (6th Cir. 2002). Thus, to state a cognizable claim, a prisoner must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Here, the evidence submitted by Defendants demonstrates that Plaintiff received medical care for his symptoms. On the first day on which he reported symptoms he was checked by a nurse and prescribed Phenergan and Zantac. On the next day, he was transported to the medical office via the restraint chair so that he would not fall. Once there, he was evaluated by a nurse who gave him some more medication and placed him on medical watch. The evidence submitted by Defendants shows that on the next day, July 27, Plaintiff was twice seen by the attending physician, had his blood pressure checked, and kept on constant observation. The documentation submitted by Defendants indicates that while Plaintiff was still at the Hopkins County Jail it was believed that Plaintiff may have been suffering from a viral illness. After he was admitted to the hospital and an experimental laparotomy was performed, Plaintiff was diagnosed with having a small bowel obstruction secondary to a congenital band.

The standard applied in reviewing the actions of prison doctors and medical staff in this type of case is deferential. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Courts will generally refrain from "second guessing" the adequacy of a particular course of treatment where a prisoner has received some medical attention and the dispute concerns the adequacy of that treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Furthermore, a court will generally not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Here, Plaintiff undisputedly received medical treatment from Defendants, although he disputes that it was the right treatment. (Plaintiff apparently agrees with the treatment he received once he was hospitalized.) Such disagreement does not rise to the level of a constitutional violation. *Westlake*, 537 F.2d at 860 n.5.

6

Moreover, to the extent that Plaintiff argues that Defendants delayed his medical treatment, that claim does not rise to the level of a constitutional violation. A medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004). However, "[t]his 'obviousness' standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs 'may *also* be decided by the *effect* of delay in treatment.'" *Id.* at 897 (first emphasis added) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Examples of the latter branch include claims of "delayed administration of medication, . . . a prisoner's refusal to take the prescribed medication, . . . or occasional missed doses of medication," *id.* at 897; "claims based on a determination by medical personnel that medical treatment was unnecessary," *id.* at 898; and "decisions involving whether the prisoner was treated adequately . . . or whether any delay in providing medical care was harmless." *Id.* In such circumstances, " '[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'"[2] *Id.* (quoting *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)(quoting *Hill*, 40 F.3d at 1188)).

---

[2] "[W]here a plaintiff's claims arise from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,' the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated." *Id.* at 899-900 (citation omitted). "Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* at 900.

Here, the records show that Plaintiff had intestinal problems that initially mirrored a viral illness; due to the length of the symptoms, Plaintiff was then taken to the hospital. Plaintiff has not placed in the record verifying medical evidence establishing a detrimental effect of a delay in medical treatment. Indeed, the record establishes that Plaintiff was suffering from a congenital defect. Nothing in the records submitted by Defendants even suggests that Plaintiff required surgery due to a delay in treatment. Plaintiff has submitted no documentary evidence in support of his claim. Therefore, Plaintiff's allegations do not rise to the level of a constitutional violation for a delay in treatment. *See id.* at 897-98.

### III. ORDER REGARDING MOTION TO AMEND

After Defendants Joe Blue, Holly Rickard, Joey Pleasant, Jill Stevens, and Kenneth Stone moved for summary judgment in their favor, Plaintiff moved to amend the complaint to name the "John Doe" and "Jane Doe" defendants (DN 54). It appears that the new defendants would be Jennifer Phillips, Shawn Graham, Angela Groves, and Rebecca Sisk.

Under the Federal Rules of Civil Procedure, in a situation like this one where Defendants have served their responsive pleading, amendment is only allowed with the opposing party's written consent or leave of court. A district court should freely grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). "A district court may deny a plaintiff leave to amend his or her complaint, however, when the proposed amendment would be futile." *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006).

Here, the Court will deny the motion to amend because, for the same reasons that summary judgment is appropriate, it would be futile to amend the claim to name the previously unidentified John and Jane Does. As discussed, the documents attached to Defendants' motion

for summary judgment show that Plaintiff received medical treatment. Plaintiff disputes that it was the right treatment, but such disagreement does not rise to the level of a constitutional violation. *Westlake v. Lucas*, 537 F.2d at 860 n.5. And, as already discussed, the record does not show that a delay in his medical treatment rises to the level of a constitutional violation.

Because allowing the amendment to the complaint would be futile, the Court **DENIES** Plaintiff's motion to amend (DN 54).

### IV. CONCLUSION AND ORDER

Plaintiff has failed to refute Defendants' arguments and also has failed to demonstrate the existence of genuine issues of material fact. Therefore, Defendants are entitled to judgment as a matter of law.[3] The motion for summary judgment (DN 47) is **GRANTED**. Plaintiff's claims are **DISMISSED**.

Date:


cc:     Plaintiff, *pro se*
        Counsel of record
        Hopkins County Attorney
4414.009

---

[3] The Court is permitted to dispose of a claim that is meritless without first requiring exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(c)(2). As such, the Court does not consider and expresses no opinion on whether Plaintiff properly exhausted his administrative remedies.